**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTIRCT OF NEW JERSEY**

| | |
|---|---|
| PATRICK C. SAVAGE : <br> 303 Quail Drive : <br> Marmora, NJ 08223 : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> AUTOLENDER'S LIQUIDATION : <br> CENTER, INC., d/b/a AUTOLENDERS : <br> 2568 Brunswick Pike : <br> Lawrence Township, NJ 08648 : <br> and : <br> ALGO, LLC : <br> 122 Cross Keys Road : <br> Berlin, NJ 08009 : <br> and : <br> CERTIFIED AUTOMOTIVE LEASE : <br> CORP, d/b/a CAL AUTOMOTIVE : <br> 4556 S. Broad Street : <br> Yardville, NJ 08620 : <br> : <br> Defendants. : | CIVIL ACTION <br><br> No. 23-CV-16166 <br><br><br> **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**I. INTRODUCTION**

1. This action has been initiated by Patrick C. Savage (hereinafter referred to as "Plaintiff," unless indicated otherwise) for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. 201, *et. seq.*) and applicable state laws. Plaintiff asserts herein that he was not paid overtime compensation in accordance with the FLSA and that he was terminated unlawfully for protective activities under the FLSA. As a direct consequence of Defendants' actions, Plaintiff seeks damages as set forth herein.

## II. JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. 1331, has jurisdiction over Plaintiff's claims because they arise under a federal law - the FLSA. There is supplemental jurisdiction over Plaintiff's state-law claims herein because they arise out of the same common nucleus of operative facts as Plaintiff's federal claim(s) set forth in this lawsuit.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III. PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. AutoLender's Liquidation Center, Inc. (hereinafter, "Defendant ALLC" where referred to individually) is a New-Jersey headquartered company (at the above-captioned address) operating as a pre-owned (or used) car dealership.

8. Algo, LLC (hereinafter, "Defendant Algo" where referred to individually) is a New-Jersey headquartered company (at the above-captioned address). Defendant Algo is a wholly-owned subsidiary of Defendant ALLC founded in 2017. Defendant Algo provides fully

virtual auto purchasing technology to enable "on-the-spot" transactions for Defendants to acquire vehicles from private owners.

9. Certified Automotive Lease Corp., d/b/a CAL Automotive (hereinafter, "Defendant CAL" where referred to individually) is an entity owned and operated by Defendant ALLC to facilitate leasing of motor vehicles.

10. Defendants CAL, Algo, and ALLC shall hereinafter be collectively referred to as "Defendants." Defendants are the same business, same operation(s), and same enterprise. Plaintiff understood he was employed by all three (3) entities. By way of examples only:

   (a) Plaintiff was given an employee handbook with policies of Defendant Algo, Defendant CAL, and Defendant ALLC (all named as his employers therein).

   (b) Plaintiff's termination documentation identified his employers as "Auto Lenders Liquidation Center, Inc, ALGO, LLC, [and] Certified Automotive Lease Corp."

   (c) Plaintiff received other documentation from Defendants illustrating they are a single employment enterprise, inclusive of compensation, benefits, and tax documentation.

   (d) Defendants' management (and executives) publicly identify on social media that they are simultaneous employees of overlapping Defendants.

   (e) Defendants operate as single enterprise, using overlapping resources, advertising, management, and business coordination. In fact, they cannot operate independently as Defendant Algo processes payments for Defendant ALLC and Defendant CAL processes leasing transactions for Defendant ALLC.

11. Defendants are properly considered a single, joint and/or integrated employer of Plaintiff for all purposes of this lawsuit.

12. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

3

## IV.  FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff was hired by Defendants effective on or about April 10, 2023; and in total, he was employed with Defendants for approximately 4.5 months (until termination effective on or about August 30, 2023).

15. Plaintiff worked for Defendants as a Virtual Buyer and Inside Sales Representative. This is the manner in which he was referred to internally by Defendants.

16. Plaintiff was supervised (directly and/or indirectly) by management including *inter alia*, Anthony Mancini (Vehicle Purchasing Consultant), Kyle Ragan and Steve Kauth (mid-level to higher-level management), and Greg Markus (Vice President).

17. Defendants had (and presumably continue to have) an unlawful policy of not paying overtime to non-exempt employees such as Plaintiff. Plaintiff's job with and for Defendants was *irrefutably* a non-exempt role under both state and federal law(s).

18. Plaintiff averaged working at least forty-five (45) hours per week, and Defendants did not make any effort to track, document, or record Plaintiff's actual hours worked for Defendants. Plaintiffs actual work hours were not even specified on his payroll.

19. Plaintiff was paid a set salary and a "performance bonus" for meeting quotas, goals, and targets. In total, Plaintiff would have earned approximately $50,000.00 - $60,000.00 per annum if his pay and anticipated performance bonuses continued in a similar fashion (as of date of his termination from employment). Although Plaintiff was given overall bonuses, he was not given compensation from any particular / specific purchase or sale of any vehicles.

20. Defendants' business structure is very simple and straight forward. Defendants buy used (or pre-owned) vehicles from customers to lease or sell at a higher price.

21. Plaintiff's job for Defendants consisted of the following:

    (a) He would physically work from Defendants' office location each day;

    (b) Plaintiff would view a list of company-generated leads in Defendants' database and computer system;

    (c) The leads Plaintiff viewed were of people who were seeking a quote to sell a pre-owned or used vehicle to Defendants;

    (d) Plaintiff would go through his computer-generated list or queue and contact each person desiring to sell a vehicle to Defendants;

    (e) Plaintiff would verify the type of vehicle, condition, and other data he was directed by Defendants to request (per standard, required questions);

    (f) After Plaintiff verified vehicle details per routine and standard questions created by Defendants, Plaintiff would speak with a supervisor (such as Mancini). The supervisor would tell Plaintiff the price to quote the potential customer for his or her used vehicle; and

    (g) If the customer was satisfied with the purchase quote, Plaintiff would click "accept" within Defendants' system and send computer-generated emails to complete the purchase transaction of the used vehicle. The transaction of purchase would then be completed by a different department handling customer support.

22. Defendants' business model competes with companies such as Carvana, Vroom, CarMax, TrueCar, and other entities that purchase pre-owned vehicles to turn around and sell or lease at a higher price (generating business revenue).

23. Defendants tracked Plaintiff's sales and purchases (as those terms were used by Defendants, although as explained *infra*, Plaintiff **never** participated in any sale within Defendants), and he was continually ranked among his peers for calls, sales, pickups, and by way of other metrics. Plaintiff and similarly situated employees were given incentives and performance bonuses based upon their results (comprising part of their compensation structure).

24. Although Defendants referred to Plaintiff (internally or broadly speaking) as engaging in sales or being employed as an inside salesman (as to his job), Plaintiff *was never involved with actual sales, nor was the corporation in which he was directly employed*. In the interest of absolute clarity:

    (1) Plaintiff worked in an office building that **was not** frequented or accessible by customers or third parties desiring to buy a vehicle.

    (2) Although Plaintiff is suing several corporations for being joint employers under applicable statutes (in this lawsuit), each corporation serves as a separate "arm" of Defendants' enterprise. Plaintiff functionally worked under Defendant ALGO in all respects as to his duties and role. He was paid by Defendant ALGO. And he worked at Defendant ALGO's physical location (which is different than the physical locations of the other Defendants). Although Defendants CAL and ALLC orchestrated unlawful non-payment of wages or his retaliatory termination, Plaintiff was an employee of Defendant ALGO directly.

    (3) Defendant ALGO does not engage in *any* sales to any customers or to the public, and Defendant ALGO does not engage in any retail sales to any customers, or third parties as defined by state or federal law(s). It is not a retail concept in any manner.

    (4) Defendant ALGO is a legal entity that 100% of the time engages in purchasing vehicles from third parties, such as prior owners or from cessation of leases. It makes no sales to the public in any manner.

    (5) Regardless of the terminology being used about "sales," Plaintiff *functioned as* a call center representative taking information for those who wanted to sell vehicles to Defendant ALGO. Plaintiff obtained information, was given direction and approval from higher management, and processed template paperwork if Defendants' management were willing to purchase a vehicle.

25. Defendant CAL is a separate corporation that leases vehicles to the public. And Defendant ALLC is the parent entity exerting control over Defendants CAL and ALGO and providing direction on payroll and terminations.

26. Plaintiff, who was paid by and directly employed within Defendant ALGO's building, engaged in no sales to the public. The reason Defendants CAL and ALLC are included

6

in this lawsuit is because they exerted sufficient control over Plaintiff's non-payment of lawful wages and orchestration of unlawful termination.[1]

27. In or about the late June and early July 2023 timeframe, Plaintiff was verbally inquiring about why he was not compensated for overtime in his payroll. He was only being told he is "exempt" in a conclusory way or that Defendants do not pay overtime to his position.

28. On or about July 17, 2023, Plaintiff emailed Defendants human resources management stating:

> As per our convo, I am trying to determine how my specific job employed by autolenders, falls under the "exempt" status for FLSA? As discussed, you told me because I am an exempt employee I don't have the same rights as "non exempt". I appreciate your time and await your answer. I do apologize once again in advance as it's very difficult for me to understand your unorthodox lunch times and forced overtime. Thanks again.

29. Not getting any meaningful clarifications of his supposed "exempt" status and after being told to talk with different management of Defendants, Plaintiff emailed high-level management of Defendant (inclusive of Kauth and Danielle Moshons – a human resources manager) on or about August 10, 2023. Therein, he stated:

> I was hoping to have quick meeting with both of you, even if only for a few minutes. A while back on July 17th, I questioned why I wasn't getting OT pay to you both since you're expected to work the scheduled 9hrs a day. Each of you told me to talk to the other. Since then and when I took a break on Saturday-July 15th, I feel like I have been somewhat attacked and given a hard time in different ways. I'd like to clear the air and get a firm answer on my OT questions from both of you at the same time to avoid further confusion. I feel like I have not been paid properly since I worked 45hrs per week without breaks up until he incident. Thanks in advance.

---

[1] A corporation that has no patrons and only buys from third parties **cannot be a retail establishment** as a matter of law (which, by definition, engages in sales to the public). *See e.g. Spikes v. Schumacher Auto Grp., Inc.*, 2022 U.S. Dist. LEXIS 241102, at *19 (S.D. Fla. 2022)(a separate corporation within the same business umbrella that markets, steers, or sets appointments for another business in the same enterprise that actually later sells vehicles **is not itself a "retail establishment" as a matter of law**).

30. On or about August 14, 2023, Plaintiff participated in a meeting with the highest levels of management within Defendants, Moshons, Kauth and Markus (as to those whom he either reported to directly or indirectly). Defendants' management handed Plaintiff a printout and aggressively told him he is not entitled to any overtime because he falls under the "Administrative Exemption" of state and federal law(s).

31. Plaintiff could never meet the "Administrative Exemption" requirements of state or federal law(s) for several reasons.

> [1] Typical examples of positions that are administratively exempt are human resources personnel, marketing personnel, public relations personnel, in-house attorneys, and those overseeing corporate database administration. *See e.g.* 29 CFR § 541.201. These types of employees *internally administer* the business *at a high level* and have **nothing whatsoever to do with revenue generation** of a business. §541.201 does identify that in some circumstances a "Purchasing Agent" can meet the administrative exemption. However, Plaintiff is not a Purchasing Agent under §541.201. In *Whittington v. Wash. Suburban Sanitary*, 2011 U.S. Dist. LEXIS 33150, at *14 (D. Md. 2011), the court in denying summary judgment explained the plaintiff (a claimed purchasing agent) couldn't meet an administrative exemption, as asserted by the defendant. In *Whittington*, the court explained to claim a purchasing agent is exempt under the administrative exemption, the purchasing agent **must perform work that "is directly related to the management or general business operations" and "running the business itself," "not just in the day-to-day carrying out of business affairs**."[2]

---

[2] In other words, if someone is a dedicated purchasing agent for Defendants and has substantial authority purchasing paper, printers, equipment, employee vehicles, computer systems, or raw materials, the individual is administering the internal business (*and has nothing whatsoever to do with the line of business* of Defendants *or revenue generation*). This type of high-level employee with purchase power and authority to bind a company to corporate contracts could be exempt under the administrative exemption. But here, Plaintiff was performing a role that is Defendants' day-to-day revenue-generating line of business, not an internal high-level administrative role. *See also Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2nd Cir. 2009) ("[W]e have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business."); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990)(the dichotomy distinguishes between "those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market"); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 904 (3d Cir. 1991)(Only work that is "ancillary to an employer's principal production activity" is administrative.

> [2] Plaintiff is a <u>production</u> employee. Employees who perform a role that relates to the revenue generation of a business can never be an "administrative" employee (or meet the administrative exemption).[3]
>
> [3] Courts do not focus on employer job titles which are often creative, inapplicable, or not reflective of a job, but rather, ***<u>focus on allocations of job duties</u>***.[4] Plaintiff's

---

[3] Courts have rejected out of hand via summary judgment rulings for plaintiffs individually and in class cases where employers try to argue administrative exemptions in far more complicated jobs than Defendants (because they are "production employees"). *See Gusdonovich v. Business Info. Co.*, 705 F. Supp. 262, 265 (W.D. Pa. 1985)(granting summary judgment to employee and finding that administrative exemption cannot apply to employee titled "investigator" because <u>he performed core business</u> of the defendant which was to collect information for its third-party clients, insurance companies); *Clark v. Centene Co. of Tex.*, L.P., 44 F. Supp. 3d 674, 676 (W.D. Tex. 2014)(granting summary judgment in nationwide collective action to plaintiffs explaining that even though registered nurses titled cases managers by the employer perform complex evaluations of claims to be paid for the company, <u>they are providing the service offered by the employer</u> for third parties and are production employees rendering the administrative exemption inapplicable to them and stating further they perform no integral management role within the business itself); *Grage v. Northern States Power Co.*, 47 F. Supp. 3d 844 (D. Minn. 2014)(granting summary judgment to supervisor who was solely responsible for coordinating with customers receipt of fuel, making sure deliveries were made and coordinating scheduling because the work was not in direct relation to management, but rather, <u>a production role</u> of ensuring company output of the product it offered); *Stultz v. J.B. Hunt Transp., Inc.*, 35 F. Supp. 3d 866, 870 (E.D. Mich. 2014)(granting judgment to plaintiff who worked as a parts manager because he performed no role of administering the business under the administrative exemption and was responsible for ensuring payment, standard supplies were ordered pursuant to an inventory and addressing vendor concerns, which was <u>a production role</u>); *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1069-1070 (9th Cir. 1990)(rejecting defendant's attempt to analogize probation officers to insurance adjusters just because they regularly conduct investigations because the administrative exemption is not applicable to employees <u>who perform day-to-day services provided by an employer, which is a "production" role</u>, as they worked in the probation department.); *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394 (6th Cir. 2004)(reversing district court and holding as a matter of law radiation material and environmental specialist could not meet the administrative exemption because he did not perform any role related to administration of the company); *Reich v. Gateway Press*, 13 F.3d 685 (3d Cir. 1994)(affirming district court that newspaper reporters are non-exempt under FLSA despite research because they are providing the very service offered by the company); *Longlois v. Stratasys, Inc*., 2015 U.S. Dist. LEXIS 22817 (D. Minn. 2015)(granting summary judgment to Field Service Engineer explaining his installation of electrical equipment and operational instructions to clients had nothing to do with business management); *Siegel v. Bloomberg L.P.*, 2015 U.S. Dist. LEXIS 5602, 10-11 (S.D.N.Y. 2015)(granting summary judgment to Information Technology employees providing computer support throughout employer because they do not handle any matters of significance for business, do not implement management policies or practices, and have no authority to commit the employer to contractual matters); *Radtke v. Caschetta*, 2014 U.S. Dist. LEXIS 184442 (D.D.C. 2014)(affirming judgment was proper for medical record coders who reviewed and analyzed medical records as they had no role within Defendant's business management, nor was their primary role related in any way to operation of the business other than facilitating services provided by the company)

[4] *See* "29 C.F.R. § 541.2 Job titles insufficient."

> A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.

primary duties were of a clerical, data entry, and information-conveying nature. These are non-exempt duties under state and federal overtime law(s).

[4] Plaintiff cannot possibly meet the discretionary element of an "Administrative" exemption. 29 C.F.R. § 541.200(a)(3) outlines a <u>very high level of discretion</u> required for the administrative exemption to be applicable, including an employee having involvement in "formulating" and "implementing management policies," "authority to commit the employer in matters that have significant financial impact" (without prior approval), involvement in "planning long- or short-term business objectives," and the employee makes decisions "free from immediate direction or supervision." § 541.200(a)(3)(e) also clarifies that routine, mechanical, data entry and clerical work **<u>can never qualify as administrative discretion</u>**.

[5] Administrative employees are those who administer the business from a management standpoint internally and who do not engage in the core service(s) offered by their employer. Defendants' core services include buying and selling used cares (their sales). Any reviewing factfinder need look no further than Plaintiff being subjected to: (a) continuing sales goals; (b) quotas, metrics, and targets; (c) rankings amongst peers; and (d) performance bonuses for sales and purchases to generate revenue for Defendants.[5]

32.  Plaintiff was paid as an approximate $50,000.00 - $60,000.00 (annual) wage earner per year (primarily through salary). He was a glorified clerk or inside salesperson (as referred to by Defendants internally) calling individuals all day, every day (in a scripted fashion), to see if they desired to sell their used vehicles (so other Defendants in the enterprise could in turn sell or lease them shortly thereafter for a profit). He had no meaningful discretion or authority, and he certainly did not administer anything related to internal business operations.

---

[5] In *Reiseck v. Universal Commc'ns of Miami, Inc.,* 591 F.3d 101, 103 (2d Cir. 2010), the Second Circuit Court of Appeals explained the administrative exemption could not apply to the plaintiff, a "Regional Director." Specifically, the Court explained the plaintiff spent "more than 50% of her time" on a primary duty of "sales," making the administrative exemption inapplicable. *Id.* at 106-107. **<u>Critically though, the Court explained that it was apparent the plaintiff's primary role was "production" because the source of income to the company came from a role the plaintiff performed.</u>**

33. Defendants ***recklessly and falsely*** attempted to discourage Plaintiff from further dialogue about what Plaintiff perceived to be owed overtime compensation (and non-payment of any overtime compensation).

34. Plaintiff made verbal and written concerns known to multiple levels of Defendants' management about not being paid overtime compensation properly. These were "protected activities," <u>prohibiting</u> any form of retaliation. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011).

35. Plaintiff was terminated within twelve (12) business days (on August 30, 2023) from his most recent in-person conversation on or about August 14, 2023 wherein Defendants' management attempted to fervently discourage Plaintiff's (continually expressed and) perceived overtime violations for non-payment of overtime properly.

36. Leading up to Plaintiff's termination, he was being nitpicked, scrutinized, and being forced to jump through proverbial hurdles just to exercise his paid time off or for other reasons. Plaintiff in fact expressed feeling "attacked" as a result of his overtime concerns via email on August 10, 2023.

37. There was significant animosity towards Plaintiff throughout August of 2023 due to him telling Defendants' management he felt they were violating wage and overtime laws by not paying him overtime compensation. Plaintiff did so very professionally and very diplomatically, but he was nonetheless treated in an abusive (and selectively unfair) manner for doing so.

38. Plaintiff was issued a termination letter (referred to as a "Separation Agreement") dated August 30, 2023 indicating he was terminated for "Counterproductive behavior," "Insubordination / Misconduct," and a "Failure to follow Company procedure."[6]

39. The aforesaid termination letter conditioned Plaintiff's pay incentives he already earned upon Plaintiff admitting he was not the subject of "wrongful discharge" or concerned with violations of other laws. This was objectively outrageous.

40. Plaintiff remains owed unpaid overtime for 4.5 months of employment wherein he was never paid overtime properly (or at all). Plaintiff's overtime owed is premised upon his total income (including performance incentives), not just unpaid overtime based upon his base salary.[7]

41. Plaintiff is entitled to double damages for any unpaid overtime during his approximate 4.5-month tenure with and for Defendants, in addition to all legal fees.[8] *See* 29 U.S.C. § 216(b)(a prevailing plaintiff "shall" be entitled to attorney's fees).

---

[6] ***Rather shockingly***, the termination letter referenced the August 14, 2023 meeting Plaintiff requested to discuss his unpaid overtime concerns as Plaintiff being insubordinate and counterproductive. Defendants have in essence conceded retaliation for Plaintiff's protected activities.

[7] For the purposes of calculating overtime, all compensation is ***to be included*** in the overtime rate. FLSA regulations are very clear that incentive plans, commissions, or non-discretionary bonuses ***must*** be included within the overtime calculations. *See* 29 C.F.R. § 778.200, 29 C.F.R. § 778.208 and 29 C.F.R. § 778.117.

42. In addition to unpaid overtime compensation, Plaintiff is entitled to liquidated damages, punitive damages, emotional distress, back pay, front pay and other damages for his retaliatory termination from Defendants. This is a punitive case, as Defendants' retaliation against Plaintiff is documented, transparent, and shocks the conscience of a reasonable person.

### Count I
### Violations of the Fair Labor Standards Act ("FLSA")
### (Wrongful Discharge)

43. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44. Plaintiff was terminated from Defendants for expressing concerns of unpaid overtime compensation and violations of laws governing overtime pay.

45. Plaintiff's discharge from Defendants for engaging in protected activity under the FLSA constitutes unlawful retaliation under the FLSA. *See supra; see also Lambert v. Ackerley,* 180 F.3d 997, 1003-05 (9th Cir.1999)(*en banc*); *Valerio v. Putnam Assocs. Inc.,* 173 F.3d 35, 44-45 (1st Cir.1999); *EEOC v. Romeo Comty. Sch.,* 976 F.2d 985, 989-90 (6th Cir.1992); *EEOC v. White & Son Enters.,* 881 F.2d 1006, 1011 (11th Cir.1989); *Brock v. Richardson,* 812 F.2d 121,

---

[8] *See e.g. Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

123-25 (3d Cir.1987); *Love v. RE/MAX of Am., Inc.,* 738 F.2d 383, 387 (10th Cir.1984); *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 181 (8th Cir.1975).

### Count II
### Violations of the New Jersey Conscientious Protection Act ("CEPA")
### (Wrongful Discharge)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff made good-faith complaints expressing that he was being paid unlawfully in violation of state and federal law(s).

48. Plaintiff's retaliatory termination for his complaints constitutes a violation of the CEPA.

### Count III
### Violations of the Fair Labor Standards Act ("FLSA")
### (Failure to Pay Overtime Compensation)

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Defendants did not pay Plaintiff at a rate of time and one half for hours he worked beyond 40 hours per week.

51. Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid overtime compensation, as well as penalties, legal fees, and interest.

### Count IV
### Violations of the New Jersey Wage and Hour Law(s)
### (Failure to Pay Overtime Compensation)

52. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53. Defendants did not pay Plaintiff at a rate of time and one half for hours he worked beyond 40 hours per week.

54. Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid overtime compensation, as well as penalties, legal fees, and interest.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting overtime violations and retaliation;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' wrongful actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendants' actions;

D. Plaintiff is to be awarded liquidated and punitive damages as permitted by applicable law(s) in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees if permitted by applicable law; and

G. Plaintiff is permitted to have a trial by jury.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **KARPF, KARPF & CERUTTI, P.C.** |
|  | /s/ *Ari R. Karpf* |
|  | Ari R. Karpf, Esquire<br>3331 Street Road<br>Building 2, Suite 128<br>Bensalem, PA 19020<br>(215) 639-0801 |
| Dated: January 9, 2024 |  |