UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **PATRICK C. SAVAGE,**<br><br>   **Plaintiff,**<br><br> v.<br><br>**AUTOLENDER'S LIQUIDATION CENTER, INC., d/b/a AUTOLENDERS,** *et al.***,**<br><br>   **Defendants.** | Case No. 23–cv–16166–ESK–EAP<br><br><br>OPINION |

**KIEL, U.S.D.J.**

 **THIS MATTER** is before the Court on defendants Autolender's Liquidation Center, Inc. (AutoLender's), Algo, LLC (Algo), and Certified Automotive Lease Corp.'s (CAL) motion to dismiss. (ECF No. 19.) Plaintiff Patrick C. Savage filed an opposition (ECF No. 21 (Pl.'s Opp'n Br.)) to which defendants replied (ECF No. 24 (Defs.' Reply Br.)). For the following reasons, defendants' motion will be DENIED.

 **I. BACKGROUND AND PROCEDURAL HISTORY**

 AutoLender's is a New Jersey company that operates as a pre-owned or used vehicle dealership. (ECF No. 13 (Am. Compl.) p. 2.) Algo is a wholly owned subsidiary of AutoLender's that provides auto-purchasing technology to enable defendants to acquire vehicles from private owners. (*Id.* pp. 2, 3.) CAL is an entity owned by AutoLender's that facilitates the leasing of vehicles. (*Id.* p. 3.) Defendants purchase pre-owned or used vehicles and sell or lease them for a profit. (*Id.* p. 5.)

 Plaintiff was employed and paid by Algo, though he asserts that defendants constitute a single business, operation, and enterprise. (*Id.* pp. 3,

6.) Plaintiff understood that he was employed by all defendants and each exerted control over his wages and ultimate termination. (*Id.* pp. 3, 7.) For instance, plaintiff's employee handbook contained the policies of each defendant, his termination documents identified all three defendants as his employers, and defendants operate with overlapping advertising, management, and other resources. (*Id.* p. 3.) Defendants' policy was to not pay overtime to non-exempt employees such as plaintiff. (*Id.* p. 4.)

Plaintiff was hired on or about April 10, 2023 and worked as a virtual buyer and inside sales representative. (*Id.*) He was supervised by Anthony Mancini, vehicle purchasing consultant; Kyle Ragan and Steve Kauth, mid-level and high-level managers; and Greg Markus, vice president. (*Id.*) Plaintiff worked an average of at least 45 hours per week and defendants did not attempt to track his actual hours worked or document them on his payroll documents. (*Id.*) Instead, he was paid a set salary and a performance bonus not tied to any specific vehicle transactions. (*Id.* pp. 4, 5.) Plaintiff's job consisted of going through company-generated leads of individuals seeking a quote for the sale of their pre-owned or used vehicles and contacting each individual. (*Id.* p. 5.) Plaintiff verified the type of vehicle and its condition and collected other data pursuant to defendants' required list of questions. (*Id.*) After verifying the required information, plaintiff would speak with and obtain a price quote from a supervisor. (*Id.*) Plaintiff would click "accept" in the defendants' computer system if the individual was satisfied with the quote, computer-generated emails would be transmitted, and customer support would step in to complete the purchase. (*Id.*)

Algo, where plaintiff physically and "functionally worked … in all respects as to his duties and role," purchases vehicles from third parties and makes no sales to the public. (*Id.* p. 6.) Plaintiff's sales, purchases, calls, and other metrics were tracked and ranked by defendants, though plaintiff contends that

he was never involved in actual sales. (*Id.* pp. 5, 6.) Plaintiff would have earned between $50,000 and $60,000 per year if he performed as anticipated. (*Id.* p. 4.)

Plaintiff began inquiring about why he was not compensated for overtime in late June or early July 2023. (*Id.* p. 7.) He was informed only that he was exempt or that defendants did not pay overtime for his position. (*Id.*) On July 17, 2023, plaintiff emailed human resources stating that he was trying to determine why his position was exempt. (*Id.*) He did not receive "meaningful clarifications" and emailed managers including Kauth and human resources manager Danielle Moshons on August 10, 2023 to request a meeting about his status. (*Id.*) Plaintiff stated that he felt as though he was being attacked and given a hard time since his July 17, 2023 email and wanted to "clear the air and get a firm answer on [his] OT questions." (*Id.*)

A meeting between plaintiff, Moshons, Kauth, and Markus was held on August 14, 2023. (*Id.* p. 8.) During the meeting plaintiff was handed a printout and "aggressively" informed that his position fell under the administrative exemption of state and federal wage-and-hour laws. (*Id.*) Plaintiff contends now that he could not have fit under the administrative exemption because he was a production employee involved in revenue generation without any meaningful discretion or authority. (*Id.* pp. 9, 10.) Rather, he was discouraged from engaging in future dialogue pertaining to his potential entitlement to overtime pay. (*Id.* p. 11.)

Plaintiff was terminated on August 30, 2023. (*Id.* pp. 11, 12.) Prior to his termination, animus was directed toward plaintiff and he was nitpicked, scrutinized, and "forced to jump through proverbial hurdles just to exercise his paid time off or for other reasons." (*Id.* p. 11.) His termination letter attributed counterproductive behavior, insubordination, misconduct, and failure to comply with company procedures as reasons for this termination.

(*Id.* p.12.) The termination letter explicitly referenced the August 14, 2023 meeting between plaintiff and management. (*Id.* p.12 n.6.) Payment of incentives already accrued by plaintiff were conditioned on his concession that he was not wrongfully discharged. (*Id.* p.12.)

Plaintiff filed suit on September 5, 2023. (ECF No. 1.) The parties submitted pre-motion letters to Judge Georgette Castner. (ECF Nos. 7, 8.) Judge Castner determined that a pre-motion conference would not be helpful, (ECF No. 9), and defendants moved to dismiss (ECF No. 10). Rather than oppose the motion, plaintiff filed the operative amended complaint. (Am. Compl.) The amended complaint asserts four counts: 1) wrongful discharge in violation of the Fair Labor Standards Act (FLSA), 2) wrongful discharge in violation of the New Jersey Conscientious Employee Protection Act (NJCEPA), 3) failure to pay overtime in violation of the FLSA, and 4) failure to pay overtime in violation of New Jersey Wage and Hour Law (NJWHL). (*Id.* pp.13–15.) Judge Castner again granted defendants leave to file a motion to dismiss following the exchange of a second set of pre-motion letters. (ECF Nos. 15, 16, 17.) The pending motion practice followed, after which this case was reassigned to me. (ECF No. 25.)

## II.   STANDARD AND PARTY ARGUMENTS

### A.   <u>Motions to Dismiss</u>

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and—accepting the plaintiff's factual assertions, but not legal conclusions, as true—"'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant

is liable for the misconduct alleged,'" *id.* at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

"[A] court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency."  *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (quoting *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290 (3d Cir. 2014)).  The Third Circuit has nonetheless found that courts may permissibly "consider 'document[s] *integral to or explicitly relied* upon in the complaint'" and "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Id.* at 133 n.7 (alteration in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) and *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

### B.  Party Arguments

Defendants first argue that plaintiff was exempt from overtime under federal and state law because he was a salesman primarily engaged in selling automobiles.  (ECF No. 19–1 (Defs.' Mot. Br.) p. 17.)  Defendants operate a dealership and are primarily engaged in selling and leasing vehicles.  (*Id.* p. 19.)  Plaintiff conceded that he worked as an inside sales representative in his original complaint and alleges in his amended complaint that his sales and purchases were tracked by defendants—indicating that he performed a critical

role in obtaining vehicles for resale.  (*Id.* p. 18.)  Plaintiff's offer letter states that he was to be paid $30 per vehicle purchased and monthly incentives for profits gained from vehicles he purchased and his paystubs indicate that he was paid a commission.  (*Id.*)  Plaintiff also fits within the inside sales exemption because defendants operate a retail establishment engaged in the sale of used vehicles, plaintiff's regular pay was more than one-and-a-half times the federal minimum wage, and 53% of his compensation came from commissions.  (*Id.* pp. 20–22.)  In New Jersey, the inside sales exemption falls within the administrative exemption and plaintiff is similarly covered under it because his primary duty involved the sale of used automobiles, he never earned less than $400 in a week, and more than half of his compensation stemmed from commissions.  (*Id.* p. 23.)

With respect to plaintiff's retaliation claims, defendants contend that plaintiff has failed to plead a causal link between protected activity and his termination.  (*Id.* pp. 26–30.)  Allegations that he was nit-picked and subjected to animus are without support, according to defendants.  (*Id.* p. 27.)  Further, the temporal gap between his complaints beginning in late June or early July 2023 and his termination on August 30, 2023 is too wide.  (*Id.* pp. 27, 28, 30.)  Specific to plaintiff's NJCEPA claim, defendants argue that plaintiff has failed to sufficiently allege that he objectively believed that defendants were violating the law or a clear mandate of public policy.  (*Id.* p. 25.)  Defendants explained to plaintiff that he was exempt and provided printouts of applicable law and analysis, thus he could not have reasonably believed that defendants were violating the law.  (*Id.* pp. 25, 26.)  It "strains credulity" that an employer attempting to violate the law would provide such information to its employee and New Jersey courts have made clear that a complaining employee may be disciplined if their complaint is not objectively reasonable.  (*Id.* p. 26.)

6

Plaintiff responds that defendants' motion to dismiss his wage claims are premature. (Pl.'s Opp'n Br. pp. 21–36.) Exemptions are affirmative defenses that must be apparent on the face of the complaint and an employee's duties are questions of fact. (*Id.* pp. 22–25.) Plaintiff was not engaged in selling vehicles and defendants cannot show at this stage that plaintiff performed anything beyond ministerial tasks or that Algo is primarily in the business of selling or servicing automobiles. (*Id.* pp. 25–28.) Plaintiff further claims that he did not fit within the inside sales exemption because defendants cannot establish at this time that they qualify as a retail or service establishment and he does not concede that he was paid bona fide commissions. (*Id.* pp. 32–35.) Likewise, plaintiff argues that he did not engage in any sales for the purposes of the New Jersey administrative exemption. (*Id.* p. 36.)

Plaintiff adds that his NJCEPA claim merely requires an objectively reasonable belief that a violation has occurred and he engaged in protected activity by pursuing his overtime complaints up the chain of command. (*Id.* pp. 38–40.) Defendants' argument is essentially that the sheer fact that he was told that no illegality was taking place thwarts his claim, but it would be "perverse" to require an employee to prove that they were misclassified in order to prevail in their NJCEPA claim. (*Id.* pp. 40–43.) Lastly, plaintiff argues that he has asserted sufficient facts of causation for both of his retaliation claims, including temporal proximity, the fact that he was nitpicked and antagonized, and the fact that the August 14, 2023 meeting was referenced in his termination letter. (*Id.* pp. 44–46.)

### III. DISCUSSION

#### A. Plaintiff's Retaliation Claims (Counts 1 and 2)

I begin with defendants' attack on plaintiff's retaliation claims. The FLSA makes it unlawful "to discharge or in any other manner discriminate

against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. §215(a)(3). A FLSA retaliation claim consists of 1) the plaintiff engaging in protected activity, 2) the plaintiff suffering an adverse employment decision, and 3) a causal relationship between the adverse employment decision and protected activity. *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 850 (D.N.J. 2019).

Similarly, the NJCEPA prohibits employers from retaliating against an employee who objects to or refuses to participate in an activity, policy, or practice that the employee reasonably believes is in violation of law. *See* N.J. Stat. Ann. §34:19–3(c)(1). The NJCEPA defines "[r]etaliatory action" to include "the discharge, suspension or demotion of an employee." N.J. Stat. Ann. §34:19–2(e). In order to state a NJCEPA claim, a plaintiff must allege that 1) they reasonably believed that their employer's conduct violated a law, rule, regulation promulgated pursuant to a law, or a clear mandate of public policy; 2) they objected to or refused to participate in that conduct; 3) an adverse employment action was taken against them; and 4) there was a causal connection between the objection or refusal and the adverse employment action. *Stapleton v. DSW, Inc.*, 931 F. Supp. 2d 635, 639 (D.N.J. 2013). Because the requirements for establishing retaliation under the FLSA and NJCEPA are similar, I will analyze them together. *See Lowery v. Yoram Koby and JYK, Inc.*, Case No. 11–05088, 2016 WL 324948, at *2 (D.N.J. Jan. 26, 2016).

Defendants' challenges focus on the causation element required for both a FLSA retaliation claim and a NJCEPA claim and the NJCEPA's reasonable-belief requirement. (Defs.' Mot. Br. pp.24–30.) With respect to the causation element, defendants argue that plaintiff's claims are tethered to unsupported allegations that he was nit-picked and the temporal proximity between his complaints and termination. (*Id.* pp.27–30.) The two-month gap between

plaintiff's initial complaint and termination is too long to suggest that plaintiff was retaliated against.  (*Id.*)

I agree with defendants that plaintiff provides few details about the supposed scrutiny and nit-picking he faced aside from vague references to "feeling 'attacked'" and having to "jump through proverbial hurdles" to exercise his paid time off.  (Am. Compl. p. 11.)   However, even dating plaintiff's actions to his initial complaint in late June or early July 2023 and not his final meeting with management on August 14, 2023, the temporal proximity between his conduct and termination leaves open the inference of a causal link.  *See Verdone v. Rice and Rice, PC*, 724 F. Supp. 3d 366, 388–89 (D.N.J. 2024) (analyzing a NJCEPA claim, recognizing that courts within the Third Circuit have concluded that three-month or longer gaps between whistle-blowing conduct and adverse employment actions are insufficient to infer causation, and noting that "courts have refused to dismiss [NJCEPA] claims for lack of causation even when there have been three-month or longer gaps if other evidence raises an inference of causation").

Fortunately, this case is not one that requires me to rely solely on the temporal proximity between plaintiff's complaints and termination.  The complaint alleges that plaintiff's termination letter referenced the August 14, 2023 meeting as an example of plaintiff being insubordinate and counterproductive.  (Am. Compl. p. 12 n. 6.)   This allegation is unaddressed in defendants' motion brief and independently supports an inference that plaintiff's termination was causally connected to his complaints.  *See Verdone*, 724 F. Supp. 3d at 389 (finding, in the context of fraudulent joinder, that the complaint alleged a causal link between the plaintiff's whistle-blowing conduct and her termination by citing her termination letter, which acknowledged the plaintiff's allegations of fraud and harassment).  I will therefore deny dismissal on this basis.

9

Defendants next argue that plaintiff's complaints were unreasonable because defendants explained to him that he was exempt and provided printouts of applicable law and analysis. (Defs.' Mot. Br. pp. 25, 26.) It further "strains credulity to believe that an employer who was trying to violate the law would provide an employee with a copy of the very law they were violating," according to defendants. (*Id.* p. 26.) I find multiple flaws with this argument.

First, looking purely at the events as sequenced in the complaint, plaintiff received the printouts of applicable law during the August 14, 2023 meeting. (Am. Compl. p. 8.) It would make little sense then to attribute knowledge to plaintiff that he did not allegedly receive until during his final alleged complaint.

Second, taken to its logical conclusion, defendants' argument advocates for scenarios in which an employer could immunize itself from NJCEPA liability by simply telling an employee that they are incorrect and providing some level of substantiation. Such a because-I-told-you-so rule would be ripe for abuse and, more importantly, runs counter the remedial nature and liberal construction of the NJCEPA. *See Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 240 (3d Cir. 2016).

Third, even assuming that the printouts provided were accurate and applicable to plaintiff, plaintiff need not show that defendants actually violated the law in order to sustain his NJCEPA claim. *See Berdzik v. Physicians Endoscopy, LLC*, Case No. 20–11656, 2021 WL 3260857, at *5 (D.N.J. July 30, 2021). Rather, a plaintiff must set forth facts to support an objective belief of a violation. *Id.*

This leads into the final point: defendants' citation to law and analysis concerning the administrative exemption does not foreclose the possibility that plaintiff reasonably believed that the exemption was incorrectly applied to him.

Indeed, plaintiff pleads that his job duties did not match the requirements of the administrative exemption. (Am. Compl. pp. 8–10.) I therefore conclude that defendants' provision of printouts of law and analysis is insufficient to defeat plaintiff's NJCEPA claim. *See McCormick v. Maquet Cardiovascular US Sales LLC*, Case No. 15–07670, 2018 WL 3696572, at *10 (D.N.J. Aug. 3, 2018) (rejecting at summary judgment the defendant's argument that its internal policies and trade guidance—both based on anti-kickback statutes—could not be used to support a reasonable belief that anti-kickback statutes were violated). Defendants' motion to dismiss will be denied as to Counts 1 and 2.

### B. Plaintiff's Unpaid Overtime Claims (Counts 3 and 4)

I next turn to defendants' challenges to plaintiff's unpaid-overtime claims. Under the FLSA, an employee who works more than 40 hours in a week is entitled to compensation of one-and-a-half times their regular rate for those excess hours. 29 U.S.C. §207(a)(1). The NJWHL features a similar requirement. N.J. Stat. Ann. §34:11–56a4(b)(1).

Relevant here, the overtime requirements of both the FLSA and NJWHL are subject to various exemptions. Both statutory schemes place the burden of establishing an exemption on the employer. *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (FLSA); *In re Raymour and Flanigan Furniture*, 964 A.2d 830, 836 (N.J. Super. Ct. App. Div. 2009) (NJWHL).[1] A plaintiff is not obligated to plead any aspect of a defendant's affirmative defense. *See McKinney v. Union City Med. Supply, Inc.*, Case No. 19–08864, 2019 WL 3812451, at *2 (D.N.J. Aug. 14, 2019). Rather, at the dismissal stage,

---

[1] Defendants correctly note (Defs.' Reply Br. pp. 4, 5) that FLSA exemptions are not narrowly construed following the Supreme Court's decision in *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018). *See Depalma v. Scotts Co., LLC*, Case No. 13–07740, 2019 WL 2417706, at *5 n.7 (D.N.J. June 10, 2019).

the affirmative defense of an asserted exemption "is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff" and must appear on the face of the complaint. *Id.* (quoting *Flight Sys. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997)).

Defendants assert that two types of exemptions apply: the vehicle salesperson exemption and the inside sales employee exemption. I address each in turn.

The FLSA exempts from overtime requirements "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." 29 U.S.C. §213(b)(10)(A). Under the exemption, "a salesman is an employee who is employed for the purpose of and is primarily engaged in making sales or obtaining orders or contracts for sale of the automobiles, trucks, or farm implements that the establishment is primarily engaged in selling." 29 C.F.R. §779.372(c)(1). "Primarily engaged" for the employee means that over 50 percent of their time is spent on that activity, while for the establishment it means that over half of its business must come from the sales of such vehicles. *Id.* §779.372(d). The NJWHL similarly excludes "persons employed as salesmen of motor vehicles." N.J. Stat. Ann. §34:11–56a4(a).

Defendants note that plaintiff's original complaint stated that he worked as an "inside sales representative" and the amended complaint acknowledges that his sales and purchases were tracked. (Defs.' Mot. Br. p.18.) Defendants claim that they are a qualifying establishment and that plaintiff was eligible for incentives for each vehicle he purchased and based on the profits gained from vehicles he purchased. (*Id.* pp.18, 19.) Plaintiff was also paid a commission. (*Id.* p.18.)

Insofar as defendants reference the original complaint in their briefing, "in general, an amended pleading … supersedes the earlier pleading and renders the original pleading a nullity." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017)[2] Further, "[a] job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the" exemption. 29 C.F.R. §541.2; *Dooley v. CPR Restoration & Cleaning Servs. LLC*, 591 F. App'x 74, 76 (3d Cir. 2014). With this backdrop, I conclude that defendants do not meet their burden that the vehicle salesperson exemption applies.

The decision in *Steahle v. Cargroup Holdings, LLC*, Case No. 24–01447, 2024 WL 3904053 (E.D. Pa. Aug. 22, 2024)—which was reached following the parties' briefing—is most helpful. There, alleged class members purchased vehicles from customers. *Steahle*, 2024 WL 3904053, at *1. They interacted with customers, assessed the condition of vehicles, and inputted related data but did not negotiate with customers beyond extending a computer-generated offer. *Id.* After an offer was accepted, alleged class members would record title information, print final paperwork, submit title information and paperwork for review, print a payment check, remove and return license plates, and request that the customer complete a survey. *Id.*

---

[2] Defendants contend that the allegations in the amended complaint are contradicted by the original complaint. (Defs.' Mot. Br. pp.8, 9.) The case cited for this proposition—*Fields v. Colgate Palmolive Co.*—dealt with the futility of amendment based on the asserted dates that claims allegedly accrued. Case No. 10–00365, 2010 WL 5252537, at *5 (D.N.J. Dec. 15, 2010). I do not find that plaintiff's statements in the amended complaint that "inside sales representative" was the title used by defendants, his sales were tracked but he did not participate in sales, and he was not compensated for any specific transactions are impermissibly contradicted by the original complaint. I therefore rely on the allegations asserted in the operative amended complaint.

13

The court concluded that the defendant was not primarily engaged in the business of selling vehicles to ultimate purchasers because it was separated from retail customers by other dealers. *Id.* at *4. It further rejected the defendant's argument that the alleged class members were "adjacent" to vehicle sales because assessing vehicles, presenting computer-generated price offers, consulting with other departments, and completing post-purchase clerical work did "not reflect integral involvement in 'selling' as defined by the FLSA." *Id.* at *5. Alleged class members did not promote or advise on sales, but rather performed administrative tasks tangentially related to sales. *Id.* at *5–6. Actual sales were, in turn, conducted by a separate set of employees. *Id.* at *6.

I see no reason to reach a different conclusion here. Plaintiff alleges that he "functionally worked under" Algo, which "100% of the time engages in purchasing vehicles from third parties, such as prior owners or from cessation of leases." (Am. Compl. p. 6.) More importantly, plaintiff pleads that he would use company-generated leads to contact individuals about purchasing their vehicles, collect information by asking standard questions, seek a quote from a supervisor, and present the quote to the customer. (*Id.* p. 5.) If the customer accepted, the purchase would be completed by a different department. (*Id.*) In this respect, plaintiff appears to have had even less of a post-purchase role than the alleged class members in *Steahle*. Plaintiff emphasizes that he never participated in any sale. (*Id.* pp. 5, 6.) As such, I cannot find that the exemption appears on the face of the complaint. *See McKinney*, 2019 WL 3812451, at *2.

Defendants also seek to apply the inside sales exemption of the FLSA along with its analogous exemption within the NJWHL's administrative exemption. An employer does not violate the FLSA's overtime requirements by employing an employee of a retail or service establishment whose regular rate of pay is greater than one-and-a-half times the federal minimum wage and

who earns more than half of their compensation from commissions for a representative period of at least one month. 29 U.S.C. §207(i). The administrative exemption applies to employees whose primary duty consists of sales activity and who receive at least 50 percent of their compensation from commissions and earn a total compensation of at least $400 per week. N.J. Admin. Code §12:56–7.2(c).

Defendants assert that they operate a retail establishment, plaintiff's primary duties involved the sale of automobiles, he earned more than one-and-a-half times the federal minimum wage and $400 per week, and his payroll records show that he earned the majority of his pay from commissions. (Defs.' Mot. Br. pp.20–24.) I concluded that defendants have again failed to meet their burden of demonstrating that the inside sales and administrative exemptions apply.

First, finding in favor of defendants would require me to ignore plaintiff's clear allegations of which entity he worked for, the nature of that entity's business, and his actual job duties. (Am. Compl. pp.5, 6.) Second, plaintiff does not allege that he received commissions, but rather "performance bonuses." (*Id.* pp.4, 5.) Defendants include a certification from Moshons and plaintiff's offer letter and pay records to support the proposition that he received commissions that made up more than half of his total pay. (ECF Nos. 19–2, 19–4, 19–5, 19–7.) The parties disagree on whether I may consider these documents at the dismissal stage. (Defs.' Mot. Br. pp.15, 16, Pl.'s Opp'n Br. pp.19–21.) I conclude, however, that even if I were to consider such documents, they provide insufficient support for the proposition that plaintiff was paid bona fide commissions under the FLSA and NJWHL.

In *Parker v. NutriSystem, Inc.*, the Third Circuit determined "that when the flat-rate payments made to an employee based on that employee's sales are proportionally related to the charges passed on to the consumer, the payments

15

can be considered a bona fide commission rate for the purposes of" 29 U.S.C. §207(i). 620 F.3d 274, 283 (3d Cir. 2010). Here, it is unclear whether any bonus or commission paid to plaintiff was proportional to the charges passed on to the consumer. Plaintiff's pay records refer merely to "Com[m]ission" and a related figure. Per-vehicle-purchased, productivity, and profitability incentives referred to in plaintiff's offer letter do not provide necessary context. I conclude then that defendants have not met their burden of demonstrating that the exemptions apply, *see Pignataro*, 593 F.3d at 268, and will deny the motion to dismiss as to Counts 3 and 4, *see Boone v. Solid Wood Cabinet Co., LLC*, Case No. 17–04333, 2018 WL 2455924, at *5–6 (D.N.J. June 1, 2018) (concluding that questions of fact as to a purported bona fide commission plan rendered judgment on the pleadings inappropriate for the plaintiffs' FLSA and NJWHL claims to the extent that they were timely); *Adami v. Cardo Windows, Inc.*, Case No. 12–02804, 2014 WL 2586933, at *5–6 (D.N.J. June 10, 2014) (denying summary judgment because the record did not show whether the flat-rate payments made to the plaintiffs were proportional to the charges passed on to customers).

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (ECF No. 19) will be DENIED. An appropriate order accompanies this opinion.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: February 20, 2025